IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICO LYNTICE RILEY,<br><br>      Petitioner,<br><br>vs.<br><br>PATRICK COVELLO, Warden, Mule Creek State Prison,[1]<br><br>      Respondent. | No. 2:18-cv-03050-JKS<br><br>MEMORANDUM DECISION |

Rico Lyntice Riley, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Riley is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Mule Creek State Prison. Respondent has answered, and Riley has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On February 17, 2012, Riley was charged with sodomy accomplished by means of force, violence, duress, menace , or fear of immediate and unlawful bodily injury (Counts 1, 2); forcible acts of sexual penetration by a foreign object (Count 3); and rape accomplished by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person (Counts 4, 5). The complaint further alleged as to all counts that Riley tied and bound the victim during the commission of the offenses, and that Riley had a prior felony conviction within the meaning of the Three Strikes law. Riley pleaded not guilty, denied the enhancement allegations, and proceeded to a jury trial. On direct appeal of his conviction, the California

---

   [1]  Patrick Covello, Warden, Mule Creek State Prison, is substituted for Jared D. Lazano, former Warden, California Medical Facility. FED. R. CIV. P. 25(d).

Court of Appeals recounted the following facts underlying the charges against Riley and the evidence presented at trial:

> Around midnight on December 6, 2011, [Riley] and his girlfriend Miriam Beard arrived at the victim's apartment. Beard was the victim's friend; they had a casual, romantic relationship. After the victim turned down [Riley's] and Beard's invitation to join in an orgy and tried to leave her apartment, [Riley] tied her up and gagged her and committed multiple sexual crimes against her. He inserted a douche bottle in her anus twice, inserted his fingers in her anus and vagina, and inserted his penis in her anus. Later, when the victim thought [Riley] and Miriam had left, she managed to free herself from the restraints, but [Riley] reappeared and raped her.

*People v. Riley*, No. C074388, 2017 WL 3712318, at *1 (Cal. Ct. App. Aug. 29, 2017).

During jury selection, the prosecution used a peremptory challenge to excuse potential jurors K.F. and D.D. Riley made a *Batson/Wheeler*[2] motion, which the trial court heard and denied. The jury was impaneled the following day. At the conclusion of trial, the jury found Riley guilty as charged, and also found true the allegation that Riley tied and bound the victim during the commission of the offenses charged in counts one through five. Riley waived his right to a jury trial on the prior conviction, and the trial court found true the allegation that Riley had previously been convicted of a serious felony and that the prior was a strike within the meaning of the Three Strikes law. The court subsequently sentenced Riley to an aggregate term of 150 years to life imprisonment, plus 46 years.

Through counsel, Riley appealed his conviction, arguing that: 1) the trial court erred in denying his *Batson/Wheeler* motion; 2) the trial court erred in sentencing Riley to consecutive

---

[2] *See Batson v. Kentucky*, 476 U.S. 79 (1986) (a shorthand reference to the procedure under which a prosecutor's peremptory strikes of potential jurors are challenged on the basis that the strikes are being made on a discriminatory basis, i.e., because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds); *People v. Wheeler*, 583 P.2d 748 (Cal. 1978) (the California counterpart to *Batson*).

2

terms of imprisonment because the court did not understand that it had the discretion to sentence Riley to concurrent terms instead; and 3) he was entitled to a new trial because the jury questionnaires of the potential jurors had been destroyed, which effectively prevented him from conducting a comparative juror analysis. The California Court of Appeal unanimously affirmed the judgment against Riley in a reasoned, unpublished opinion issued on August 29, 2017. *Riley*, 2017 WL 3712318, at *9. Riley petitioned for review in the California Supreme Court, which was summarily denied on November 29, 2017.

Riley then filed in the California Superior Court a *pro se* petition for habeas relief on the ground that trial and appellate counsel rendered ineffective assistance. Specifically, Riley claimed that trial counsel failed to investigate and call certain witnesses, and appellate counsel was ineffective for failing to raise on appeal trial counsel's deficient performance. The Superior Court denied the petition in a reasoned, unpublished opinion issued on December 10, 2018. Riley also raised ineffective assistance claims in a *pro se* petition filed in the California Supreme Court, which was denied without comment on January 22, 2020.

While his state habeas petitions were pending, Riley timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court on November 19, 2018. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2). Briefing on this case is now complete, and the matter is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Riley argues that: 1) the trial court erred in denying his *Batson/Wheeler* motion; 2) he is entitled to a new trial because the jury questionnaires of the potential jurors were destroyed, which effectively prevents him from

3

conducting a comparative juror analysis; 3) trial counsel was ineffective for failing to conduct an adequate investigation and call certain witnesses at trial; and 4) appellate counsel was ineffective for failing to raise on appeal the ineffectiveness of trial counsel.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon

4

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  *Erroneous Denial of Batson/Wheeler Motion* (Ground 1)

Riley first argues that the prosecution impermissibly used a peremptory challenge to excuse from the jury pool an African-American potential juror. The Court of Appeal laid out the following facts underlying this claim:

> During voir dire of the jurors, prospective juror Danica D., who is African–American, was questioned individually about several matters. She said she "majored in criminal justice . . ., and I was to do youth corrections. And then no, so I just wanted to try something different within my field to see what I [ ] like." She was working in a women's shelter. She had cousins who committed vandalism in their early teens approximately 10 years prior. Concerning whether they were treated fairly in the justice system, she said: "Uh, I don't know. We were kind of young, so they I thought got a fair punishment, but I don't know." Her aunt was a victim of domestic violence but was still in the relationship. When asked how she felt about that, Danica D. said, "Did you mean dumb[?] She's a drama queen."
>
> After the prosecution used peremptory challenges on two of the three African–American potential jurors, including prospective juror Danica D., [Riley] made a motion challenging the prosecutor's use of peremptory challenges based on race, and the following proceedings took place outside the presence of the jury venire:
>
>> "[Defense counsel:] The concern being that [Riley] is an African–American, the two potential jurors that were just excused this afternoon by the prosecutor, both of them being African–American, there is only one other potential African–American currently in the possible jury pool that may be seated. "And [Danica D.], who was just excused by the prosecution, had indicated that there was a fair punishment for her cousin[s] who had been convicted of a vandalism. She had a criminal justice major. It looks like, if I recall her testimony, I believe it was from Sac City. I may not have noted that correctly. She works in a woman's shelter, but she basically said she does that to explore the options after she realized that juvenile justice was not her area, and I had concerns about the ethnicity of them being excused.
>>
>> "THE COURT: The first issue is whether there is any sort of systematic exclusion taking place."
>
> Later, after defense counsel identified the two African–American women (Kelly F. and Danica D.) challenged peremptorily by the prosecution, the following proceedings took place:

> "THE COURT: [Kelly F.] was the one that indicated she had difficulty following the instructions as it relates to a single witness.
>
> "[Defense counsel]: She indicated she may have difficulty, but she did not indicate that she would be unable to do so.
>
> "THE COURT: Well, that's why a cause challenge wouldn't have been granted. But that's a different issue than whether there is a[ ] systematic exclusion of African–Americans and whether there is a prima facie case.
>
> "[Defense counsel]: And I think perhaps [Kelly F.] is a reasonable exclusion.
> "But then when it rises to the next African–American woman who has several factors that would typically be perceived to be in the district attorney's favor to exclude, starts to call into question whether it's based on ethnicity.
>
> "THE COURT: I don't find there to be a systematic exclusion at this point, so the motion will be denied without asking for an explanation at this point."

After the court denied the motion, the prosecutor asked to make a record by giving an explanation for the peremptory challenges. The court allowed it, and the prosecutor said:

> "Regarding [Kelly F.], she made it clear she had issues with the one-witness rule. She also had an issue with law enforcement that she said caused her some concern.
> "Regarding [Danica D.], she had relatives that had been convicted of vandalism.
> "There is some vandalism alleged in this case. [Riley] is not charged with it, but the victim, my understanding, will testify that things were stolen from her, that her house was ransacked, which [Riley] could have been charged with vandalism.
> "Furthermore, [Danica D.] had an incident with an aunt that had endured domestic violence.
> "This case, while it's not a domestic violence case, there are definitely attributes of domestic violence in this case, and that the victim is going to say that she was assaulted by [Riley] in her home by [Riley] and his girlfriend.
> "In light of that, your Honor, I was uncomfortable with keeping [Danica D.] on the jury.
> "Furthermore, if you look at the people that are on the jury, I don't think anyone is on this jury that has a relative that has a conviction other than a DUI.
> "I was—I'm uncomfortable with having people that have relatives that have serious convictions, especially a conviction similar to the allegations or facts in this case."

We note also that in this case the victim was African–American, as were some of the witnesses.

*Riley*, 2017 WL 3712318, at *2-3.

The Equal Protection Clause prohibits purposeful racial discrimination in the selection of the jury. *Batson*, 476 U.S. at 86. In *Batson*, the Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause: 1) a defendant raising a *Batson* claim must establish a *prima facie* case of discrimination; 2) once a *prima facie* case of discrimination is established, the burden of offering race-neutral reasons for the strikes shifts to the prosecutor; 3) after the prosecutor offers race-neutral reasons, the trial court has the duty to determine if the defendant has established purposeful discrimination. *Paulino v. Harrison*, 542 F.3d 692, 699 (9th Cir. 2008) (citing *Batson*, 476 U.S. at 98).

A defendant's burden to establish a *prima facie* case at the first step and the prosecutor's burden to provide race- (or ethnic-) neutral reasons for the challenge at the second step are burdens of going forward with the evidence, while the defendant's burden at the third step is a true burden of persuasion to convince the court that the challenge was motivated at least in part by some prohibited group bias or prejudice. The ultimate burden of persuasion never shifts. *Batson*, 476 U.S. at 93; *see Purkett v. Elem*, 514 U.S. 765, 768 (1995).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" regarding *Batson* claims that "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). This "standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that the trial court's credibility determination

was supported by substantial evidence, we must uphold it." *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012).

On direct appeal, Riley contended that his conviction should be reversed because the trial court used the wrong standard in considering his *Batson/Wheeler* motion. Specifically, in considering the motion, the trial court repeatedly referred to the standard for finding a constitutional violation as "systemic exclusion." *Riley*, 2017 WL 3712318, at *4. Have found no "systemic exclusion" of African-Americans, the court denied the motion. *Id.*

Recognizing that a constitutional violation of *Batson* is a structural error requiring reversal, the appellate court nonetheless concluded that the trial court's employment of the erroneous standard did not establish that the prosecution used a peremptory challenge solely based on race, and thus there was no structural error warranting automatic reversal. Rather, the Court of Appeal concluded that "application of the wrong prima facie standard invokes de novo review on appeal." *Id.* Applying de novo review, the Court of Appeal concluded that the record did not support an inference that the prosecutor excused prospective juror Danica D. solely on the basis of race:

> First, Danica D.'s cousins committed vandalism approximately 10 years earlier when they were in their early teenage years. [Riley] claims that prospective juror Danica D. believed the punishment for her cousins for vandalism was fair, but that is an unjustified characterization of what the prospective juror said. She said, "Uh, I don't know. We were kind of young, so they I thought they got a fair punishment, but I don't know." This language does not evince a belief that the punishment was fair; instead, it demonstrates ambivalence. She said twice that she was not sure whether the punishment was fair and couched the comment concerning fair punishment on her being young. Also, there was vandalism in this case, even though it was not charged. The record shows that [Riley] ransacked the victim's apartment.
> Second, [Riley] implies that Danica D.'s criminal justice major was favorable to the prosecution. But that does not necessarily make her pro-prosecution. Some people go into criminal justice to work with or for defenders, and, in fact, that was Danica D.'s first choice; she was interested in "youth corrections."

9

> Third, Danica D. worked at a women's shelter, but, when asked about whether she encountered victims of sexual assault, she said, "They don't really say. I work in the office. It just says domestic violence, but I don't think what their nature or anything." Apparently, she did not work closely with domestic violence victims.
> Fourth, and finally, one element of prospective juror Danica D.'s voir dire, her characterization of her own aunt, a victim of domestic violence, is particularly noteworthy and would give any prosecutor pause in a case like this. When asked about her aunt's experience as a victim of domestic violence, she noted that her aunt was still in the relationship and was a "drama queen." The characterization suggests Danica D. thought the aunt overreacted or exaggerated what had happened. For this reason, she was not an ideal juror for the prosecution because it signaled that she would be skeptical about the victim's testimony.
> Contrary to [Riley's] assertion on appeal that Danica D. would be an ideal juror for the prosecution, the record suggests otherwise. Indeed, it does not support an inference that the prosecutor used a peremptory challenge to excuse Danica D. based solely on race.

*Id.* at *6.

To establish a *prima facie* case of discrimination under *Batson*'s first step, the defendant must show that: 1) the prospective juror is a member of a cognizable racial group; 2) the prosecutor used a peremptory strike to remove the juror; and 3) the totality of the circumstances raises an inference that the strike was on account of race. *Batson*, 476 U.S. at 96; *Crittenden v. Ayers*, 624 F.3d 943, 955 (9th Cir. 2010). The prosecutor's use of a peremptory strike to remove the African American juror satisfies the first two prongs of the inquiry; the question here is therefore whether the totality of the circumstances raises an inference that the strike was used on account of race. A defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. *Johnson v. California*, 545 U.S. 162, 170 (2005).

Here, the Court of Appeal relied on the correct legal standard—*Batson*—so the question is whether the appellate court unreasonably applied that case. Reviewing the totality of circumstances in this case does not raise an inference that discrimination has occurred. Although

10

an inference of discrimination may be found where the prosecutor strikes a large or disproportionate number of panel members from the same racial group, Riley does not make a statistical argument and, as indeed, could not do so given the small numbers involved. *See United States v. Collins*, 551 F.3d 914, 921 (9th Cir. 2009) ("The lack of other African-Americans in the jury pool renders mathematical trends and patterns meaningless."); *Hargrove v. Pliler*, 327 F. App'x 708, 709 (9th Cir. 2009) (rejecting step one of *Batson* claim because it "hinges on a statistical argument involving very small numbers" that, "standing alone, is insufficient to establish a *prima facie* case in light of the ample legitimate reasons in the record for the prosecution's challenge").[3] In any event, the Court of Appeal's determination is both reasonable and fully supported by the record. Nor is this decision contrary to *Batson*, and Riley cites no other federal law, much less authority from the U.S. Supreme Court, that this determination contravenes or unreasonably applies. In sum, given the deference afforded to the Court of Appeal's affirmance of the trial court's rejection of Riley's claim, this Court must conclude that the state courts did not err in finding that Riley failed to establish a *prima facie* showing of discrimination, and Riley is not entitled to relief on this ground.

---

[3] While "a *prima facie* case does not require a pattern because 'the Constitution forbids striking even a single prospective juror for a discriminatory purpose,'" *Collins*, 551 F.3d. at 919 (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994)), it is equally clear that "the striking of one juror of a cognizable racial group does not by itself raise an inference of discriminatory purpose," *Tolbert v. Gomez*, 190 F.3d 985, 988 (9th Cir. 1999); *see also Crittenden*, 624 F.3d at 955-57; *Gonzales v. Brown*, 585 F.3d 1202, 1206 (9th Cir. 2009). Thus, if after an objection the trial court finds no *prima facie* case but asks the prosecutor to disclose her reason and she were to say, "my reason should be obvious, the juror is African-American," the explanation would itself be sufficient to show a discriminatory motive without further evidence of plan or comparative jury analysis. But in the absence of an admission or other "smoking gun," there must be some evidence to support an inference, and a single challenge to a single juror standing alone cannot supply that evidence.

B.  *Destruction of Jury Questionnaires* (Ground 2)

Riley next contends that he was deprived of due process because the state courts were unable to provide him documents necessary to properly raise his *Batson* claim on direct appeal. Specifically, the state court only retained, and thus could only disclose to Riley, the juror questionnaires for those members of the jury pool that actually served as jurors. According to Riley, the unavailability of the questionnaires for the prospective jurors who were not selected prejudiced his ability to show, through comparative analysis, that the prosecutor excused prospective jurors for improper reasons. The Court of Appeal rejected the claim on direct appeal, holding that, "[b]ecause he is not entitled to a comparative juror analysis on appeal of the trial court's stage one prima facie showing ruling, the absence in the record of questionnaires for the prospective jurors not selected is irrelevant and not a due process violation." *Riley*, 2017 WL 3712318, at *7 (citation omitted).

Riley fares no better on federal habeas review. Here, the questionnaires of the other non-selected jurors would have had no value to petitioner, as comparative juror analysis calls for a comparison of the stricken juror to those jurors who were seated, not those who did not serve. *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) (comparing stricken African-American juror with "otherwise-similar nonblack" jurors who were "permitted to serve"). In any event, Riley does not cite to, nor is this Court aware of any, Supreme Court precedent that would require comparative juror analysis at step 1 of *Batson* review or require all questionnaires for such analysis. Lacking any clearly established Supreme Court authority on these points, it cannot be concluded that the appellate court's ruling contravened or unreasonably applied federal law. *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a

claim, a federal court cannot find a state court ruling unreasonable). Under the circumstances, the Court of Appeal was not unreasonable in determining that the existing record was adequate to permit appellate review, nor was its decision contrary to or an unreasonable application of, clearly established Supreme Court authority. Riley is therefore not entitled to relief on this ground.

C.  *Ineffective Assistance of Counsel* (Grounds 3, 4)

Finally, Riley claims that both trial and appellate counsel rendered ineffective assistance. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that

13

determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Riley must show that either his trial or appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Riley first faults trial counsel for failing to subpoena Beard and Roger Park to testify. According to Riley, Beard and Park would have supported his version of events and contradicted certain of the victim's testimony. Specifically, Riley contends that Beard could have testified that, after the assault, Riley did not threaten the victim that Colleen Hernandez would be watching her, and Park could have testified that the victim incorrectly described the clothes she was wearing before the assault. The Superior Court rejected this claim on habeas review on the basis that Riley "does not state how [either witness] would have supported his version of events" because, even assuming that their testimony had impeachment value, such testimony would go to "collateral matter[s] and there is no indication it would have materially impacted the evidence at trial." Docket No. 24-16 at 3. Such conclusion is both reasonable and fully supported by the

14

record; Riley thus fails to show either that counsel was deficient, or that he was prejudiced, in this regard.

Riley next argues that trial counsel undermined his defense by "sympathiz[ing]" with the victim and eliciting "damaging testimony." But he fails to clearly articulate what counsel should have done differently, or provide any reason to believe that such alternate actions would have led to a better outcome. *See Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("self-serving statement" insufficient to raise claim for relief).

Riley additionally avers that counsel should have asked the law enforcement witnesses whether they believed the victim to be credible. It is well-settled, however, that it is within the exclusive "province of the jury to determine the credibility of a witness." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). Accordingly, counsel would not have been authorized to ask such question, and counsel's inaction cannot be the basis for federal habeas relief. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to take a futile action does not constitute ineffective assistance of counsel).

Riley relatedly contends in Ground 4 that appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness. As discussed above, however, Riley fails to show that trial counsel was ineffective with respect to any of the now-proffered arguments, and thus appellate counsel cannot be faulted for not raising the claim on direct appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (appellate counsel is not under "a duty to raise every 'colorable' claim suggested by a client"). Moreover,

15

because the arguments were considered and rejected on state habeas, Riley cannot show that he was prejudiced by appellate counsel's omission on direct appeal.

V. CONCLUSION AND ORDER

Riley is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 3, 2021.

                                              /s/James K. Singleton, Jr.
                                              JAMES K. SINGLETON, JR.
                                              Senior United States District Judge